STUART L. GIBSON and GRETCHEN B. GIBSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gibson v. Commissioner
Docket No. 2906-80.
United States Tax Court
T.C. Memo 1982-342; 1982 Tax Ct. Memo LEXIS 399; 44 T.C.M. (CCH) 168; T.C.M. (RIA) 82342; June 21, 1982. Stuart L. Gibson, pro se. Miles D. Friedman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined income tax deficiencies against petitioners Stuart and Gretchen Gibson in the amounts of $1,716 and $985 for 1976 and 1977, respectively. After concessions, the issues for decision are: (1) Whether a disposition of one investment property in 1976 and acquisition of another such property in 1976, by a partnership in which petitioners had a one-half interest, qualifies as an "exchange" under section 1031, I.R.C. 1954, with the result that petitioners may *401 defer recognition of a portion of their share of the gain realized on the disposition; and (2) whether petitioners are entitled to an investment tax credit in 1977 for a leased automobile. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners, husband and wife, resided in Irvine, California. They timely filed joint Federal income tax returns for the taxable years ended December 31, 1976, and December 31, 1977. In 1972, petitioners and another couple formed an equal partnership called "Magiclands", and on November 1, 1972, Magiclands *402 purchased for investment purposes a lot at Snowmass, Colorado (the Snowmass property), which was improved only by utility connections and a paved road. This property was sold, on May 1, 1976, to Stewart and Romayne Dixon (the Dixons) entirely for cash. On July 21, 1976, Magiclands purchased, also for investment purposes, an improved parcel in Irvine, California (the Irvine property), from the Standard Pacific Corporation. This property was paid for with cash and a note. Upon sale of the Snowmass property, the Dixons paid $14,000 of the $49,700 purchase price to an escrow agent in Colorado. This money was transferred by that escrow agent to a wholly different escrow agent in California, through which the Irvine purchase was being consummated, and was used as the down payment by Magiclands on the Irvine purchase. When the latter escrow account was closed, $1,530.35 of this amount was refunded to Magiclands. The Dixons and Standard Pacific Corporation were not shown to have any connection with one another, nor was there any agreement between them or any other parties (including the escrow agents) to cast the sale of the Snowmass property and the purchase of the Irvine property *403 in the form of an exchange rather than a sale and a wholly independent subsequent purchase. The record does not show that the cash transferred by the Colorado escrow agent to the California escrow was not available to Magiclands or was not subject to Magiclands' full control prior to such transfer. On their 1976 income tax return, petitioners excluded from income their entire share of Magiclands' gain on the disposition of the Snowmass property. In the statutory notice of deficiency, the Commissioner determined that this gain must be included in petitioners' income in 1976. On January 31, 1977, petitioners leased a new 1977 Volvo automobile from Cenval Leasing (Cenval) for a period of 36 months. It was stipulated at trial that the automobile was used 80 percent for business purposes. The lease agreement identified Cenval as the "Assignee" of Earle Ike Imports, which in turn was identified as the "Dealer/Lessor". While the agreement does not clarify these terms, it appears that Cenval purchased the automobile from Earle Ike Imports and leased it to petitioners, whose payments under the lease were made to Cenval. By the due date of petitioners' 1977 Federal income tax return, *404 neither Cenval nor Earle Ike Imports had issued a statement to petitioners electing to treat petitioners as the first users of the automobile for purposes of the investment tax credit. No credit was claimed on petitioners' 1977 tax return in respect of this lease, and the issue was not raised in the original petition in this case. Instead, petitioners claimed entitlement to this credit in an amendment to their petition, which amendment was permitted pursuant to Rule 41(a), Tax Court Rules of Practice and Procedure.
OPINION 1. Section 1031 Exchange.As a general rule, all gain or loss on the sale or exchange of property must be recognized. Section 1002, I.R.C. 1954. [2] Under section 1031(a), [3] gain or loss is not recognized if property is exchanged solely for other property of a "like kind". If the exchange is not solely for like kind property, but includes other property or money, then gain is recognized to the extent of the money and the fair market value of the other property received. Section 1031(b). [4]
*405 No issue is raised here as to whether the Snowmass and Irvine properties were of a like kind; instead, we have only to consider whether the transaction in question was an "exchange", as opposed to a sale of one property and purchase of another. Petitioners apparently concede that to the extent Magiclands retained the cash received from the Dixons for Snowmass, they must recognize their gain on the disposition. It is their position, however, that the transfer of a portion of the sales proceeds directly from the sales escrow agent to the purchase escrow agent transformed the transactions into a section 1031(b) exchange, with the result that a corresponding portion of their gain on the disposition is not recognized. It is true that taxpayers have been allowed a great deal of flexibility in structuring a sale and an otherwise unrelated purchase as an "exchange" which may receive non-recognition treatment under section 1031. See, e.g., Starker v. United States,602 F. 2d 1341, 1352 (9th Cir. 1979); Biggs v. Commissioner,69 T.C. 905, 913 (1978), affd. 632 F. 2d 1171 (5th Cir. 1980). Nevertheless, *406 a prerequisite for qualification as a like kind exchange is the presence of an exchange; it is not enough that property is sold and the proceeds rapidly reinvested in comparable property. See Barker v. Commissioner,74 T.C. 555, 560-561 (1980). In Carlton v. United States,385 F. 2d 238 (5th Cir. 1967), the transaction in question was planned as an exchange, but was executed as a sale of the taxpayer's property with reinvestment of the proceeds by the following day. The court held that section 1031 was inapplicable, saying (385 F. 2d at 242): The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property. * * * Where, as here, there is an immediate repurchase of other property with the proceeds of the sale, that distinction between a sale and exchange is crucial. In this case, the record fails to show that the disposition of one property and acquisition of another was even contemplated as an exchange. Instead, it seems apparent that the Snowmass property was simply sold to the Dixons for cash. For *407 reasons not made clear by the record, a portion of the sales proceeds was paid into escrow by the Dixons. The taxpayers have introduced no evidence in respect of the terms of the escrow agreement; in particular, there has been no convincing showing that the taxpayers, through Magiclands, could not have received the escrow money at their discretion. Compare Barker v. Commissioner,supra,74 T.C. at 564. The escrow money was in fact transferred directly from the Snowmass escrow agent to the Irvine escrow agent and most of it was used as a deposit on the Irvine property. This fact, however, standing alone, is insufficient to convert into an exchange what was clearly a sale of one property followed by a purchase of another property. As far as we know, petitioners' control over this money was "unfettered and unrestrained", and this characterization of the transaction is unaffected by the decision to reinvest the money in other property. Carlton v. United States,supra,385 F. 2d at 243. In support of their contention that they are entitled to section 1031 treatment, petitioners rely upon Rev. Rul. 77-297, 1977-2 C.B. 304, in *408 which, they claim, the Commissioner has ruled "that an exchange can be effected through an escrow account as long as the taxpayer cannot obtain use of the escrow monies that are to be transferred to another escrow". Regardless of whether petitioners correctly interpret Rev. Rul. 77-297, but cf. Barker v. Commissioner,supra,74 T.C. at 567-568, this argument does not further their cause, for as noted above, they have not demonstrated that the money held in escrow was unavailable to them. Moreover, in Rev. Rul. 77-297, the potential purchaser of the taxpayer's property actually acquired the property which the taxpayer desired to obtain, and then in fact exchanged it for the taxpayer's property. That situation stands in sharp contrast to the instant case, where funds which were clearly sale proceeds were simply paid into one escrow and later transferred to an entirely different escrow to be used in the purchase of other property. We hold that section 1031 is inapplicable to the sale of the Snowmass property and purchase of the Irvine property. [5] Petitioners must therefore include their entire distributive share of the gain from *409 the Snowmass sale in their gross income for 1976. 2. Investment Tax Credit.In general, section 38, as amplified by section 48(a)(1), authorizes a credit against tax for investment in tangible personal property as to which depreciation is allowable and which has a useful life of three years or more. In this case, no issue is raised as to whether the new Volvo automobile, in respect of which the credit is sought, was subject to the allowance for depreciation, [6] or whether its useful life was three years or more. Nevertheless, in order to obtain the credit for new property, the original use of such property must commence with the taxpayer. Section 48(b)(2). In the case of *410 leased property, the lessor is considered the first user of the property, Haddock v. Commissioner,70 T.C. 511, 514 (1978), and thus the lessee would ordinarily be precluded from claiming the credit. However, as pointed out in Haddock,supra,70 T.C. at 514, section 48(d) permits "a lessor to elect, with respect to new property, to pass the credit through to the lessee rather than claim it himself". But if the lessor so elects, section 1.48-4(f)(1), Income Tax Regs., requires that the lessor file a statement with the lessee, "signed by the lessor and including the written consent of the lessee", containing specified information about the lessor, the lessee, and the property. Under section 1.48-4(f)(2), Income Tax Regs., the election must be filed with the lessee "on or before the due date * * * of the lessee's return for the lessee's taxable year during which possession of the property is transferred to the lessee". Moreover, pursuant to section 1.48-4(j) of the regulations, the lessor and lessee are required to keep that statement as part of their records, and the lessor is required to attach to his *411 income tax return a summary statement of all property leased during the taxable year with respect to which an election is made. Petitioners bear the burden of establishing their entitlement to the credit. Rule 142(a), Tax Court Rules of Practice and Procedure. They have adduced no evidence to show that they received a statement, electing to treat them as the first users of the automobile, from either Cenval Leasing or Earle Ike Imports [7] by the due date of their 1977 tax return, or that any of the other conditions set forth in the regulations were met. Since the credit is unavailable to them unless such an election is made, petitioners have failed to carry their burden of proof on this issue and we therefore hold for the Government. [8]
*412 Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. Another issue, the proper amount of depreciation for 1976 and 1977 on the investment property acquired in 1976, remains unresolved. The parties have agreed, however, that resolution of this issue depends solely upon our decision as to whether that property was acquired in a sec. 1031↩ "exchange". The case also involves certain other matters, such as the computation of the allowable medical deduction, which will be resolved automatically in accordance with the results reached on the issues litigated.
2. We note that sec. 1002↩ has been repealed, see sec. 1901(b)(28)(B)(i), Tax Reform Act of 1976, 90 Stat 1799, and reenacted in a modified form as sec. 1001(c), see sec. 1901(a)(121), Tax Reform Act of 1976, 90 Stat. 1784. However, these changes were effective for taxable years beginning after December 31, 1976. Sec. 1901(d), Tax Reform Act of 1976, 90 Stat. 1803. 3. SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OF INVESTMENT. (a) Nonrecognition of Gain or Loss From Exchanges Solely in Kind.--No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. (b) Gain from Exchanges Not Solely in Kind.--If an exchange would be within the provisions of subsection (a), * * * if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. ↩
4. See n. 3, supra.↩
5. We note that the facts in this case are strikingly similar to those in Meadows v. Commissioner,T.C. Memo. 1981-417. In that case, we also held that sec. 1031↩ does not apply simply because some sale proceeds are transferred directly from the sale escrow account to the purchase escrow account.
6. See sec. 1.48-1(b)(2), Income Tax Regs.↩, which states that for property which is used 80 percent for business purposes, as was the case here, 80 percent of such property will qualify for the investment tax credit.
7. In view of the absence of proof on this issue, we need not and do not express any opinion as to whether the statement should have been filed by Cenval Leasing or Earle Ike Imports or both. ↩
8. We need not consider the possible applicability of the remedial provisions of section 1.9100-1 of the regulations, which generally give the Commissioner discretion in specified circumstances to grant a reasonable extension of time for the making of an election or application for relief. There is nothing in the materials before us indicating that any request was ever made to invoke these remedial provisions, and petitioners have not made any contention in this Court in respect thereof.↩